UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
THIRD DIVISION

---

Vertical Real Estate, Inc.,

Plaintiff,

v.

airBand Communications, Inc., a Delaware corporation, airBand Communications Holdings, Inc., a Delaware Corporation, and airBand Communications Equipment, LLP,

Defendants.

Civil No. 01-804 DWF/AJB

**REPORT AND RECOMMENDATION**

---

Robert L. Meller, Jr. (with Robert D. Maher and Cynthia L. Hegarty on the brief), BEST & FLANAGAN, LLP, Minneapolis, Minnesota, appeared on behalf of Plaintiff.

Rachna Sullivan (with Patrick J. Rooney on the brief), RIDER, BENNETT, EGAN & ARUNDEL, LLP, Minneapolis, Minnesota, appeared on behalf of Defendants.

M. Scott Barnard (with Randall R. Kucera on the brief), AKIN, GUMP, STRAUSS, HAUER & FELD, LLP, Dallas, Texas, appeared on behalf of Defendants.

---

## I. INTRODUCTION

Plaintiff Vertical Real Estate, Inc. ("Vertical") has brought this diversity action, making several claims including fraud, breach of contract, promissory estoppel, equitable estoppel and unjust enrichment. The claims flow from a letter agreement ("Agreement"), wherein Vertical committed to supply turnkey services for Defendant airBand Communications, Inc. ("airBand").[1]

[1]Although Defendants airBand Communications Holdings, Inc. and airBand Communications Equipment, LLP were not parties to the Agreement, there is no satisfactory discussion explaining why the Court should draw distinctions between the Defendants for purposes of the instant motion. Therefore, all Defendants will be referred to herein as "airBand."

FILED JAN 0 7 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

This case is now before the Court on airBand's motion to dismiss for lack of personal jurisdiction. In the alternative, airBand argues that venue is improper and asks the Court to dismiss the case pursuant to FED. R. CIV. P. 12(b)(3), or transfer it pursuant to 28 U.S.C. § 1406(a). Finally, airBand argues that, if the Court finds that jurisdiction and venue are proper, the case should be transferred pursuant to 28 U.S.C. § 1404(a).

The matter is properly before the undersigned United States Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. For reasons discussed below, it is recommended that airBand's motion be denied.

## II. BACKGROUND

[A]irBand has its principal place of business in Dallas, Texas. (Rominger Aff. ¶ 2). [A]irBand has no offices, employees, operations, bank accounts or property in Minnesota. (Rominger Aff. ¶ 8). [A]irBand is not registered to do business in Minnesota, nor does it pay taxes in Minnesota. Id. Vertical is a Minnesota corporation having its principal place of business in Minneapolis, Minnesota. (Igel Aff. ¶ 1).

[A]irband uses specialized antennas to provide wireless Internet access for small and medium-sized business customers in key metropolitan areas. (Rominger Aff. ¶ 2). As part of its "rollout" plan, airBand contracted with Vertical to provide turnkey services. (Igel Aff., Ex. A). Meaning, Vertical would locate and secure roof-top space for airBand's antennas and would manage the construction of the antennas. (Complaint ¶ 10). The Agreement also provided that Vertical would manage all of the roof-top leases for a fifteen percent (15%) fee. Id.

Vitesse Networks ("Vitesse") (not a party to this action) was also a party to the Agreement. (Igel Aff., Ex. A). Vitesse is a Delaware corporation, having its principal place of

business in Minneapolis, Minnesota. (Jaffray Aff. ¶ 2). Vitesse agreed to provide the high-speed network infrastructure for the proposed airBand network. (Poulos Aff. ¶ 9). In a sense, Vertical and Vitesse "combined forces" for the airBand project. (Igel Aff., Ex. A).

With respect to the negotiations of the Agreement, the parties dispute who initiated contact. In any event, there is no dispute that, after the initial contact, Tom Poulos, President of Vertical, traveled to Dallas in April 2000 to discuss the proposed business relationship. (Mills Aff. ¶ 6; Pl. Memo. at 5). After the initial face-to-face meeting, the parties engaged in additional negotiations via telephone and e-mail. (Mills Aff. ¶ 7). Thereafter, Poulos returned to Dallas, accompanied by David Igel, Vice President of Vertical. Id. After this second meeting, the parties again engaged in additional negotiations via telephone and e-mail. (Igel Aff. ¶ 2). Thereafter, the parties arrived at the Agreement. The Agreement was executed by airBand (in Texas) on June 12, 2000 and by Vertical and Vitesse (in Minnesota) on June 13, 2000. (Mills Aff. ¶ 3; Igel Aff. ¶ 3 & Ex. A.).

The Agreement contemplated a city by city rollout, beginning with Dallas, Phoenix, San Francisco, Atlanta and an unnamed city. (Igel Aff., Ex. A). In addition, at some point, airBand directed Vertical to commence work in five other cities: Washington, D.C., Chicago, San Diego, Denver and Boston. (Igel Aff. ¶ 5).

As it related to Vertical, the "rollout" plan proceeded as follows: First, airBand would issue a search ring[2] to Vertical in Minnesota. (Igel Aff. ¶ 14). Vertical would then deploy subcontractors to the particular city, and in some cases, Vertical itself might make a visit to the

[2]A search ring is an area designated by a carrier (like airBand) where an antenna needs to be located to provide coverage to that area. (Igel Aff. 14).

city. Id. Various potential sites would be located within the search ring and would be provided to airBand, who would then select the preferred site. (Complaint ¶ 11). It was then Vertical's job to secure a roof-top lease and manage the construction of the antenna. (Complaint ¶¶ 10, 11). Vertical would then manage all of the leases for airBand. (Complaint ¶ 10).

As indicated above, some of the work performed under the Agreement occurred in states other than Minnesota. (Igel Aff. ¶ 5). In fact, airBand provided Vertical with workspace in its Dallas offices. (Mills Aff. ¶ 8). On the other hand, however, the management of the airBand project, including the management of the "fieldwork," was performed in Minnesota. (Jaffray Aff. ¶ 7; Poulos Aff. ¶ 10; Igel Aff. ¶¶ 5, 7). In addition, according to Vertical, the lease-management component of the Agreement was to be performed entirely from Vertical's offices in Minnesota. (Igel Aff. ¶ 5).

As noted above, Vertical has brought this diversity action, making several claims including fraud, breach of contract, promissory estoppel, equitable estoppel and unjust enrichment. Vertical's complaint alleges, *inter alia*, that:

> [Vertical] reasonably relied upon the[] representations of [airBand] and thereby duly performed . . . site acquisition, construction management and construction services, and also provided [airBand] with [Vertical]'s proprietary information as to the identity of site acquisition and construction management services and techniques. In truth, while [airBand] represented it would continue to contract exclusively with [Vertical], [airBand] instead wrongfully converted and misused [Vertical]'s proprietary information, learned the identity of [Vertical]'s subcontractor specialists, and [airBand] illegally went behind [Vertical]'s back and entered into contracts directly with [Vertical]'s subcontractors, thus [airBand] violated its Agreement with [Vertical] and stole [Vertical]'s proprietary information to the direct damage of [Vertical].

(Complaint ¶ 19).

This case is now before the Court on airBand's motion to dismiss for lack of personal

jurisdiction. In the alternative, airBand argues that venue is improper and asks the Court to dismiss the case pursuant to FED. R. CIV. P. 12(b)(3), or transfer it pursuant to 28 U.S.C. § 1406(a). Finally, airBand argues that, if the Court finds that jurisdiction and venue are proper, the case should be transferred pursuant to 28 U.S.C. § 1404(a).

## III. DISCUSSION

### A. Personal Jurisdiction

To overcome a pretrial motion to dismiss for lack of personal jurisdiction, the nonmoving party must make a *prima facie* showing of personal jurisdiction. Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991). "[A]t the pretrial stage, all evidence must be viewed in the light most favorable to the plaintiff and all factual disputes must be resolved in the plaintiff's favor. Doubts as to whether a court has personal jurisdiction over an individual or entity should be resolved in favor of retaining jurisdiction." Tuttle v. Lorillard Tobacco Co., 118 F.Supp.2d 954, 958 (D. Minn. 2000) (citation omitted). After reviewing Vertical's complaint and affidavits–and upon taking the assertions therein as true–the Court concludes that Vertical has made a *prima facie* showing of personal jurisdiction.

Determination of whether a federal court has jurisdiction over a non-resident party begins with the application of a two-step test. Soo Line Railroad Co. v. Hawker Siddeley Canada, Inc., 950 F.2d 526, 528 (8th Cir. 1991). First, the court asks whether the exercise of jurisdiction is permitted under the forum state's long-arm statute, and second, the court considers whether the exercise of jurisdiction comports with due process. Id. Since Minnesota's long-arm statute extends jurisdiction to the fullest extent permitted by due process, the test is simply whether the exercise of personal jurisdiction conforms with due process. Id.

Due process mandates that a forum state may not exercise jurisdiction over a nonresident defendant unless the defendant has sufficient "minimum contacts" with the forum state. Id. Sufficient contacts exist when the defendant's conduct is such that it should reasonably anticipate being haled into court in the forum state. Id. The "reasonable anticipation" requirement is met when the defendant has engaged in some act by which it purposely avails itself of the privilege of conducting activities within the forum state and thereby invokes the benefits and protections of its laws. Id.

The "purposeful availment" requirement prevents a defendant from being haled into court based on random, fortuitous, or attenuated contacts, or the unilateral activity of another party. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). Jurisdiction may be established, however, where the defendant has created "continuing obligations" between itself and residents of the forum state. Id. at 476, 105 S.Ct. at 2184.

The Eighth Circuit has distilled these principles into a five-factor test: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the connection between the contacts and the cause of action; and less importantly, (4) the forum state's interest in providing its residents with a forum; and (5) the convenience of the parties. Wessels, Arnold & Henderson v. National Medical Waste, Inc., 65 F.3d 1427, 1432 (8th Cir. 1995). After analyzing airBand's contacts with Minnesota, in light of these factors, the Court concludes that exercising personal jurisdiction over airBand comports with due process.

This dispute grew directly from the Agreement between airBand, Vertical and Vitesse. The Agreement was not the result of unilateral acts by Vertical or Vitesse; airBand was an active participant in the negotiations. Although the face-to-face negotiations took place in Texas, the

parties engaged in additional negotiations via telephone and e-mail. Although the Agreement was executed by airBand in Texas, it was executed by Vertical and Vitesse in Minnesota. Although performance under the Agreement required activities outside of Minnesota, Vertical and Vitesse managed and coordinated their activity from their offices in Minnesota. The Agreement did not involve a mere one-time sale, but instead, contemplated an ongoing business relationship between the parties. Indeed, the Agreement provided that Vertical would not only deliver a ready-to-use wireless network, but would perform ongoing management of that network. Moreover, at some point, airBand extended the scope of the Agreement by directing Vertical to commence work in additional cities.

The Court concludes that airBand's conduct–with respect to the at-issue Agreement–created substantial contacts with Minnesota. Those contacts were not random or fortuitous. Nor are they attenuated from this action. As noted above, this action grew directly from those contacts. Therefore, the Court has personal jurisdiction over airBand.

**B. Improper Venue**

As an alternative argument, airBand contends that venue is improper and therefore, this case should be dismissed pursuant to FED. R. CIV. P. 12(b)(3) or transferred pursuant to 28 U.S.C. § 1406(a).

Because this is a diversity action, the applicable venue provision is 28 U.S.C. § 1391(a), which provides, *inter alia*, that venue is proper in a district where any defendant resides, if all defendants reside in the same state. 28 U.S.C. § 1391(a)(1). A defendant that is a corporation is deemed to reside in any district in which it is subject to personal jurisdiction at the time the suit begins. 28 U.S.C. § 1391(c). The Court has concluded above that Minnesota may exercise

personal jurisdiction over airBand and therefore, venue is proper in Minnesota.[3] Neither dismissal under Rule 12(b)(3), nor transfer under 28 U.S.C. § 1406(a),[4] is warranted here.

**C. Transfer Under 28 U.S.C. § 1404(a)**

Finally, airBand argues that, if the Court finds that jurisdiction and venue are proper, the case should be transferred pursuant to 28 U.S.C. § 1404(a). The Court concludes airBand has not shown that a transfer is warranted here.

Any civil action may be transferred to any other district or division if the action could have been originally brought in the proposed district or division and if such a transfer, relative to the plaintiff's choice of forum, would provide for (1) the convenience of the parties, (2) the convenience of the witnesses and (3) the interest of justice. 28 U.S.C. § 1404(a).

A court's analysis must begin with the presumption that the action should remain in the plaintiff's choice of forum, especially when the plaintiff resides there. Graff v. Qwest Communications Corp., 33 F.Supp.2d 1117, 1121 (D. Minn. 1999). The moving party bears the burden to show that, in the balance, the factors *strongly* favor transfer; a transfer should be denied if the factors weigh only slightly in favor of the movant. Id.

1. Is the Northern District of Texas a Proper Forum?

The threshold issue is whether a plaintiff's action could have been brought in the proposed district or division. Brockman v. Sun Valley Resorts, Inc., 923 F.Supp. 1176, 1179 (D.

---

[3]Although airBand Communications Equipment, LLP is a partnership and not a corporation, "the propriety of venue in suits involving defendant partnerships must be assessed under corporate venue standards." Injection Research Specialists v. Polaris Industries, L.P., 759 F.Supp. 1511, 1512-14 (D. Colo. 1991).

[4]It should be noted that 28 U.S.C. 1406(a) operates only in cases where the first forum chosen is improper. Mayo Clinic v. Kaiser, 383 F.2d 653, 655-56 (8th Cir. 1967).

Minn. 1996). Here, airBand asserts that this case could have been brought in the Northern District of Texas. Vertical, completely silent on the issue, apparently concedes the point. Thus, the Court will proceed with the remainder of the analysis.

2. Convenience of the Parties

A case should be transferred to a more convenient forum, not an equally convenient forum, nor a forum which shifts the inconvenience from one party to the other. Graff, 33 F.Supp.2d at 1121. Here, airBand identifies six potential employee witnesses. (Mills Aff. ¶ 10(a)-(c); Rominger Aff. ¶¶ 2, 10(a)-(b)). With respect to these individuals, airBand raises concerns about concomitant time and expense generated by distant litigation. These concerns do not carry much weight for at least two reasons.

First, Vertical is obviously faced with the same concerns. Vertical identifies twelve potential employee witnesses, including the President and Vice-President of the company. (Poulos Aff. ¶ 1; Igel Aff. ¶ 1 & Ex. M). Secondly, the Court is more concerned with nonparty witnesses than employee witnesses. Gundle Lining Construction Corp. v. Fireman's Fund Insurance Company, 844 F.Supp. 1163, 1166 (S.D. Texas 1994) ("It is the convenience of non-party witnesses, rather than employee witnesses, however, that is the more important factor and is accorded greater weight.").

[A]irBand also points out that many documents and records are located in Dallas. The Court acknowledges that the location of documentary evidence is a proper factor to consider on a motion to transfer. Guenther v. Cooper Life Sciences, Inc., Civ. No. 4-88-503, 1988 WL 131340, at *2 (D. Minn. Dec. 5, 1988). However, Vertical also argues that many documents and records are located in Minnesota.

The Court concludes that, under the convenience-of-the-parties factor, neither Minnesota nor Texas is clearly favored.

3. Convenience of the Witnesses

"The convenience of the witnesses is an important factor for a court since it determines the 'relative ease of access to sources of proof.'" Graff 33 F.Supp.2d at 1121. Here, as potential nonparty witnesses, airBand identifies four former employees, 19 property managers and two subcontractors. (Mills Aff. ¶¶ 2, 10(d)-(f), 11(a)-(b), 12(a)-(d), 13). According to airBand, all of these individuals are located in the Dallas area. Id.

In response, however, Vertical identifies about 90 potential nonparty witnesses. (Igel Aff., Ex. M). Although most of these individuals are not located in Minnesota, a significant number are located here. Therefore, the Court is not convinced that the convenience-of-the-witnesses factor favors either forum.

4. Interest of Justice

The interest-of-justice factor weighs very heavy. Graff 33 F.Supp.2d at 1121. Among the considerations which may be relevant to this factor are: (1) the relative familiarity of the courts with the governing law, (2) the relative abilities of the parties to afford the costs of distant litigation, (3) judicial economy, (4) the plaintiff's choice of forum, (5) obstacles to a fair trial and (6) the relative abilities of the parties to enforce a judgment. Id. With respect to these considerations, airBand does not provide helpful discussion. The Court concludes that, because of the presumptive weight afforded a plaintiff's choice of forum, the interest-of-justice factor weighs against transfer.

5. Conclusion

Although a plaintiff's choice of forum is not entitled to controlling weight, it is entitled to significant weight. Brockman, 923 F.Supp. at 1179. A movant may overcome the plaintiff's choice of forum only when the balancing of factors *strongly* favors transfer. Id. Here, the Court concludes that airBand has failed to carry its heavy burden.

## IV. RECOMMENDATION

For the foregoing reasons, IT IS HEREBY RECOMMENDED THAT:

1. Defendants' motion be denied.

Dated: January 4, 2002

Arthur J. Boylan
UNITED STATES MAGISTRATE JUDGE

## NOTICE

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of the Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations, or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within 10 days.

AJB